■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERIC PAGE, Appellant. [982 NYS2d 188]—

McCarthy, J. Appeal, by permission, from an order of the County Court of Schenectady County (Drago, J.), entered October 2, 2012, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment convicting him of the crimes of murder in the second degree, attempted murder in the second degree and assault in the first degree, without a hearing.

In December 1994, defendant was convicted of murder in the second degree, attempted murder in the second degree and assault in the first degree and was sentenced to an aggregate prison term of 28⅓ years to life. Defendant's conviction was affirmed by this Court (225 AD2d 831 [1996], lv denied 88 NY2d 883 [1996]). In May 2012, defendant moved to vacate his judgment of conviction pursuant to CPL 440.10, based upon newly discovered evidence in the form of a ballistics report obtained

through a Freedom of Information Law request and the affidavit of a new witness alleging that a third party had admitted to committing the crimes. County Court denied defendant's motion without holding a hearing and defendant now appeals, by permission.

Defendant first argues that the ballistics report constituted *Brady* material and that there was a "reasonable probability" that it would have changed the outcome of the proceedings (*People v Fuentes*, 12 NY3d 259, 263 [2009]; *see People v Matthews*, 101 AD3d 1363, 1367 [2012], *lv denied* 20 NY3d 1101 [2013]; *People v Auleta*, 82 AD3d 1417, 1421 [2011], *lv denied* 17 NY3d 813 [2011]). Assuming, without deciding, that the report constituted *Brady* material and that the People were under an obligation to disclose it, we nonetheless find defendant's contention without merit. Here, defendant's conviction was premised upon the testimony of Marvin Grimsley, the victim who survived the attack, who testified that he and the other victim, Ralph Vilanueva, had purchased crack cocaine from defendant twice during the day and that, when defendant returned to collect money and they were unable to pay, defendant fired two shots, one killing Vilanueva and the other wounding Grimsley (225 AD2d at 832). The ballistics report proffered by defendant simply stated that the bullets recovered from the two victims lacked sufficient microscopic detail to determine whether they were fired from the same weapon and, therefore, defendant's contention that such evidence could have been used to challenge the People's theory that one gun fired both bullets did not raise a reasonable probability that the outcome of his trial would have been different (*see People v Matthews*, 101 AD3d at 1367; *People v Auleta*, 82 AD3d at 1421).*

However, we find that the affidavit of Maurice Miller proffered by defendant was sufficient to warrant a hearing. Miller's affidavit was subscribed to in January 2012 and alleged, among other things, that he had witnessed another drug dealer, Alexander Llanos, sell crack to Grimsley on the day of the shooting, that defendant was not present in the area, and that Llanos later confessed to the shooting. First addressing whether the evidence could have been obtained with due diligence prior to trial, a court must keep in mind "the practicalities of the situation" and weigh the "limited resources generally available" to a

---

* Defendant incorrectly interprets this report to mean that the bullets must have been fired from different weapons. A more accurate interpretation is that the groove impressions were similar, such that the bullets may have been fired from the same gun, but this cannot be scientifically and conclusively confirmed.

defendant (*People v Hildenbrandt*, 125 AD2d at 819, 821 [1986], *lv denied* 69 NY2d 881 [1987]; *see People v Tankleff*, 49 AD3d 160, 180 [2007]). Miller averred that he had not contacted police at the time of the crime because he feared retaliation. Defendant was 16 years old, incarcerated and had assigned counsel. Under these circumstances, there is no indication that defendant's failure to discover this witness was the result of a lack of due diligence (*see People v Hildenbrandt*, 125 AD2d at 821-822).

Turning to the question of whether the evidence proffered was merely impeachment evidence, the confession of Llanos to the crime was material to the ultimate issue of defendant's guilt or innocence (*see People v Nicholson*, 222 AD2d 1055, 1056-1057 [1995]; *compare People v Richards*, 266 AD2d 714, 715 [1999], *lv denied* 94 NY2d 924 [2000]). Furthermore, a defendant has a fundamental right to offer into evidence the admission of another to the crime with which he or she is charged and, therefore, a hearing should have been held to determine the probative value of Miller's testimony and its probable effect on the verdict (*see People v Deacon*, 96 AD3d 965, 968 [2012], *appeal dismissed* 20 NY3d 1046 [2013]; *People v Gibian*, 76 AD3d 583, 585 [2010], *lv denied* 15 NY3d 920 [2010]; *see e.g. People v Hildenbrandt*, 125 AD2d at 822). Accordingly, we find a hearing necessary to promote justice inasmuch as the issues raised are " 'sufficiently unusual and suggest searching investigation' " (*People v Nicholson*, 222 AD2d at 1057, quoting *People v Crimmins*, 38 NY2d 407, 416 [1975]; *see People v Campbell*, 81 AD3d 1251, 1252 [2011]).

Lahtinen, J.P., Stein and Garry, JJ., concur. Ordered that the order is reversed, on the law, and matter remitted to the County Court of Schenectady County for further proceedings not inconsistent with this Court's decision.